# AFFIDAVIT IN SUPPORT OF DNA WARRANT
(Re Elvin Wrensford)

## INTRODUCTION

I, Richard Matthews, duly sworn, depose and state that I am employed by the Virgin Islands Police Department as an investigator and had been assigned to the Investigation Bureau, St. Croix District, for approximately 15 years. During that time, I have investigated numerous homicides and related offenses. While serving in that capacity on May 10, 2012, I was assigned to conduct a follow-up investigation into a reported shooting incident that occurred on May 10, 2012 at about 8:06 p.m. on St. Croix, Virgin Islands.

The facts and information contained in this Affidavit are based partially upon my personal knowledge, partially upon the observations of other agents involved in this investigation, and other law enforcement officers, and partially upon information provided by witnesses and informants. Because this affidavit is being submitted for the limited purposes of securing a warrant, not all information known to Affiant is included in this affidavit.

## DEFENDANTS' BACKGROUND

Name: Elvin Wrensford
Place of Birth: St. Kitts
Date of Birth:
Address: FCI Coleman Low, Coleman, Florida (Prisoner No. 08773-094)
   Currently in Custody of United States Marshal Service Division
   of St. Croix (for hearing on September 17, 2019 in District
   Court of the Virgin Islands- St. Croix)

## FACTS OF THE INVESTIGATION

Investigation into the above-mentioned homicide revealed the following:

1) Upon arrival at the crime scene on May 10, 2012, Affiant observed several spent casings (9mm and .40 calibers) on the south bound lane in the

vicinity of the intersection by Food Town supermarket and Gold Coast Custom Kitchens (Gold Coast). There was blood in the grass area in front of Gold Coast. The victim, Gilbert Hendricks, Jr., was lying in the grass area with an apparent bullet wound to his head.

2) While at the crime scene that night, Virgin Islands Police Officer Kirk Fieulleteau received information that "Craig" and "Wrensford" committed the crime and that Craig resided in Princess.

3) Dr. Luis Reyes-Mercado pronounced Hendricks dead on May 12, 2012. A subsequent autopsy revealed that the cause of death was two gunshot wounds to the head. Two slugs were removed from the victim's head. One was subsequently determined to be a .40 caliber projectile and the other determined to be consistent with a 9mm projectile. A bullet was retrieved from the building for Food Town and was determined to be a .38 caliber projectile.

4) Witness No. 1 (W1) was interviewed at the crime scene. W1 told the police that W1 was in the vicinity of Food Town at the time of shooting and observed the Victim running from the old service station traveling northbound. W1 heard several shots being discharged from a red truck occupied by two Black males. The driver turned right by Gold Coast thus blocking the Victim's path and stopped under a lit street light. The Victim stopped running and the passenger of the red truck placed his upper body out the window and continued to discharge shots at the Victim. W1 then observed the shooter's face. The Victim fell to the ground and the passenger continued to shoot at him.

5) W1 related that it appeared, from the sound, as though two different firearms were discharged. After the shooting stopped, the truck left.

6) W1 described the shooter as a Rasta male about 5' 8" to 5' 9", with a dark complexion, wearing a stocking cap and a dark shirt. W1 further stated W1 could identify the passenger if seen again.

7) W1 described the truck as a GMC or S-10 with damage to the driver side fender and tail gate and a gold strip on both sides.

8) About 45 minutes after the shooting, VIPD Officer ? Mendez intercepted two individuals traveling on foot westward by St. Croix by the Sea, located just over a mile from the crime scene.

9) They were perspiring and claimed to have been playing basketball.

10) Upon further conversation with them, both males fled from Mendez.

11) A few minutes later, Officer Leon Cruz apprehended an individual running from the same area where Mendez encountered the two males, and fitting the description given by Mendez.

12) Cruz recognized the person as Elvin Wrensford whom he knew from childhood.

13) He had located Wrensford approximately one and one half miles from the crime scene.

14) Investigation revealed that Wrensford purchased the recovered GMC truck in March 2012.

15) The truck was recovered approximately two miles from the crime scene and half a mile from the area where Wrensford was apprehended.

16) W1 identified a photo of the recovered red GMC truck as resembling the truck used in the crime. The truck had sustained damage to the driver side fender and tail gate and had white stripes. A test conducted, in Affiant's presence, on June 11, 2012 revealed that the GMC truck was operable.

17) At about 10:34 p.m. on May 10, 2012, police returned to the area where Wrensford was apprehended, searched and recovered a 9mm Smith and Wesson firearm with and empty magazine, in the grass, approximately 5 feet from where Wrensford was apprehended. This firearm was not made in the Virgin Islands and had traveled in interstate commerce. Forensic analysis

showed that 9mm shells recovered from the crime scene and 9mm shells recovered from the bed of the red GMC truck were fired from that firearm.

18) The serial number for the firearm was obliterated and testing showed that it was operable.

19) Forensic analysis also showed that .9mm shells recovered from the crime scene and from the bed of the red truck were linked to the firearm recovered at the scene of Wrensford's apprehension.

20) Witness No. 3 (W3) related to the police that W3 observed Wrensford and Muller drinking at Ben's Car Wash located a short distance from the crime scene, at about 4:30 p.m. on May 10, 2012.  Wrensford and Muller left about 6:00 p.m.

21) A male individual later arrived, along with the Victim, and told W3 and others about an altercation he had with Wrensford and Muller earlier that afternoon at the Car Wash.  W3 related that both the male individual and the Victim left the Car Wash.  The Victim later returned alone.  A red truck appeared and left.  Someone came over and said, "that's Elvin and Craig" in the truck.  The Victim took off and started to run.  The male individual who had the argument with Wrensford and Muller was not at the Car Wash at this time.

22) W3 further related that the truck turned around and followed the Victim while the passenger discharged shots at the Victim.  W3 has seen Wrensford and Muller hanging out on numerous occasions.

23) Witness No. 4 (W4) corroborated the statements of W3.  W4 further stated that W4 observed Wrensford and Muller arguing with an individual on May 10, 2012 during the afternoon at Ben's Car Wash.  The individual walked away and they followed and continued to argue with him.  Wrensford and Muller then left the Car Wash in Muller's vehicle.  Later, W4 observed a red truck appear at the Car Wash and fired shots at the Victim who was running toward Food Town.  After the shooting, he saw the Victim on the ground with a bullet wound the head.

24) A firearms check revealed that neither Wrensford nor Muller had a license to possess a firearm.

25) Forensic Officer George Felix collected DNA samples from the firearm recovered near Wrensford.

26) Based upon information, experience and Affiant's considered judgment, St. Croix Christian Academy, located in the vicinity of Five Corners traffic light on North Side Road, is within one thousand feet of the crime scene mentioned above.

27) DNA testing is initiated by the Virgin Islands Police Department by taking oral saliva swabs from the suspect.

WHEREFORE, based upon the above, Affiant has probable cause to believe that:

    A. Elvin WRENSFORD (while aided and abetted by Craig Muller) did commit the offenses of Possession of a Firearm in a School Zone (18 U.S.C. §9229q)(2(A)); Possession of a Firearm with an Obliterated Serial Number (18 U.S.C. §922(k)); Unauthorized Possession of a Firearm (14 V.I.C. §2253(a)); and Murder First Degree (14 V.I.C. §922(a)); and

    B. WRENSFORD's DNA (i.e., genetic material) will be linked to evidence from the crime, that is, DNA, extracted from the recovered firearm.

Affiant thus requests that this Court issue a warrant compelling Elvin WRENSFORD to provide the Virgin Islands Police Department with oral saliva samples of his DNA.

*Richard Matthews* (signature)
Richard Matthews
Police Officer

SUBSCRIBED AND SWORN TO
before me on September 17, 2019

*George W. Cannon* (signature)
GEORGE W. CANNON
United States Magistrate Judge